JOHN L. ROSS, Appellant, v. HORATIO CLARK, Respondent.

*Attachment—Absconding.*—The actual absconding of a party from his usual place of abode, and taking up an abode in another State, supports an attachment upon the ground that the party has absconded, or absented himself from his usual place of abode, under s. d. 4, § 1 of the Attachment Act, R. C. 1855, p. 238.

*Absconding—Evidence.*—The fraudulently disposing of his goods in a clandestine manner is evidence against a party against whom an attachment issues, on the ground that the defendant has absconded, for the purpose of showing the intent of the absence.

*Appeal from St. Louis Circuit Court.*

The facts are sufficiently stated in the opinion of the court.

For the plaintiff the court gave the following instructions:

1. If the jury believe from the evidence that the defendant, at the time when this attachment was issued, had absconded from his usual place of abode in this State, so that the ordinary process of law could not be served upon him, they will find for the plaintiff.

2. If the jury believe from the evidence that at the time when this attachment was issued the defendant had absented himself from his usual place of abode in this State, so that

the ordinary process of law could not be served upon him, they will find for the plaintiff.

3. If the jury believe from the evidence that shortly previous to the issuing of this attachment the defendant had absented himself from his usual place of abode in this State, leaving his wife a mere boarder at a boarding-house, and that at the time when this attachment was issued she had left that place and gone home to her father, to reside temporarily in his family, and that the defendant did not come again into this State until after the return term of the attachment suit had passed over; then at said time he had no usual place of abode in this State, within the meaning of the statute, so that the ordinary process of law could be served upon him, and the jury will find for the plaintiff.

4. If the jury believe from the evidence that when the attachment was issued the defendant had absented himself from his usual place of abode in this State, and that he took up his permanent residence, at least for a time, in the State of Texas, and actually remained there, engaged in business in that State, for a period of nearly seven months thereafterwards; that he had no family but a wife, and that at the time when this attachment was issued she had gone home to her father, to reside temporarily in his family; then the defendant at said time had no usual place of abode in this State, within the meaning of the statute, so that the ordinary process of law could be served upon him, and the jury will find for the plaintiff.

For the defendant the court gave the following:

1. The burden of proof is on the plaintiff to establish the existence of the facts alleged by him as the grounds of his attachment. It is not sufficient that he had *good reason* to believe, and did *believe*, at the time of suing out his attachment, that the defendant had absconded or absented himself from his usual place of abode in this State, so that the ordinary process of law could not be served upon him; it must be proved actually to the satisfaction of the jury that the defendant had thus absconded or absented himself.

2. The ordinary process of law contemplated by the statutes of this State is a writ of summons.

3. The mode of serving the ordinary process of law may be either, first, by reading the writ to the defendant; second, by delivering to him a copy of the writ; third, by leaving a copy of the writ at the usual place of abode of the defendant, with some white person of the family over the age of fifteen years.

4. If the jury shall believe from the evidence that, on the 3d day of January, 1859, the ordinary process of law could have been served upon the defendant by leaving a copy thereof at the usual place of abode of the defendant, with some white person of his family over the age of fifteen years, whether the defendant had at that time absconded or absented himself from such place or not, they will find the issue for the defendant.

5. Every casual and temporary absence of a debtor from his usual place of abode is not a legal ground for issuing an attachment against his property; it must be such as to prevent the service of ordinary process upon him.

6. The mere fact that a debtor is temporarily absent from the county of his residence, leaving no white person of his family over the age of fifteen years at his usual place of abode, will not authorize an attachment against his property.

The following instructions asked by the plaintiff were refused:

1. The jury are instructed that the statute allowing an attachment, "where the debtor has absconded from his usual place of abode in this State," bases the right to the attachment upon the personal misconduct of the debtor in withdrawing or absenting himself privately," which is the definition of *absconding*, and if the jury believe, from the evidence, that at the time when this attachment was issued the defendant had absconded from his usual place of abode in this State, so that the ordinary process of law could not be served upon him personally, they will find for the plaintiff.

2. The jury are instructed, that, in the sense of the law,

the usual place of abode of a man having a family, is the place provided for by him as the place of his and their permanent residence and domicil, and his and their home, from and to which he habitually goes and returns upon his ordinary avocations and business.

3. If the jury believe from the evidence, that shortly previous to the issuing of this attachment the defendant had absented himself from his usual place of abode in this State, leaving his wife a mere temporary boarder at a boarding-house kept by another person, and that he did not come again into this State until after the return term of the attachment writ had passed; that he had no family but a wife, and that at the time when this attachment was issued he had no permanent place of residence in this State provided for by him; as for his and her permanent home and residence, they will find for the plaintiff.

4. If the jury believe from the evidence, that at the time when this attachment was issued the defendant had absented himself from his usual place of abode in this State, and taken up his permanent residence, at least for a time, in the State of Texas, and that he actually remained there engaged in business in that State for a period of nearly seven months thereafterwards; that he had no family but a wife, and that, at the time of issuing this attachment, she was a temporary boarder at a boarding-house kept by another person; then the defendant, at said time, had no usual place of abode in this State, within the meaning of the statute, so that the ordinary process of law could be served upon him, and the jury will find for the plaintiff.

5. If the jury believe from the evidence, that at the time when this attachment was issued the defendant had absconded from his usual place of abode in this State; that he went to Texas and took up his residence in that State with the intention of permanently remaining there, at least for a time, and actually remained there engaged in business in that State for a period of nearly seven months; that he had no family but a wife, and that when he so absconded he left her a mere

temporary boarder at a boarding-house kept by another person; then at said time of issuing the attachment the defendant had no usual place of abode in this State, within the meaning of the statute, so that the ordinary process of law could be served upon him, and the jury will find for the plaintiff.

*N. Holmes*, for appellant.

I. In the sense of the law, " the usual place of abode of the defendant" means the fixed home and place of permanent residence of his family and himself, to and from which he goes and comes in his ordinary avocations and business; and the second and third instructions refused the plaintiff should have been given. (R. C. 1855, p. 1223, § 7, Attachment Act.)

It is the place where the defendant's family and himself " shall permanently reside in this State." (R. C. 1855, p. 732, § 53.)

Matter of Wrigley, 4 Wend. 602, S. C., 8 Wend. 134–9, Walworth, Ch.) "A mere residence of a temporary nature" is not enough : it must be " one of a permanent and fixed character," to constitute residence in law. "Inhabitancy or residence do not mean precisely the same thing as domicil," but they mean " a fixed and permanent abode or dwelling-place for the time being, as contradistinguished from a mere temporary *locality* of existence.

Place of abode, residence, domicil, means a man's *home*, to and from which he goes and returns daily, weekly, or habitually, from his ordinary avocations and business. (Chaine v. Wilson, 1 Bosw., N. Y., 673.)

Stratton v. Brigham, 2 Sneed, 420, " in the sense of the attachment laws, domicil means the same thing as residence, and is the home, a habitation fixed in any place without a present intention of removing therefrom." (Sto. Confl. Laws, § 43.)

II. Having given up his residence in St. Louis and absconded to Texas, for the purpose and with the intent of

taking up a permanent residence and place of residence there, and having actually established himself in business there, with intent to remain for the time being, it was of no sort of importance that his wife remained a temporary boarder in St. Louis; and the fourth and fifth instructions refused the plaintiff contained a correct exposition of the law of the case, and should have been given. (Sto. Confl. Laws, § 41.)

The difference between residence and domicil, in general law, is, that domicil adds to *residence* the intention of remaining permanently. (Sto. Confl. Laws, § 44.) This element of *permanency* is precisely what the statute (R. C. 1855, p. 732, § 53) has added to residence, in order to define the meaning of "the usual place of abode in this State;" and it is the permanent home provided by the party for himself and family, and where his family and himself "permanently reside." (Sto. Confl. Laws, § 43.) "That is properly the domicil of a person in which his habitation is fixed, without any present intention of removing therefrom." This is exactly what is meant by the statute. (Sto. Confl. Laws, § 47–8; Fuller v. Bryan, 20 Penn. 144; Houghton v. Ault, 16 How. Pr. R. 81–2.)

The cases of Temple v. Cochran, 13 Mo. 116; Kingsland v. Worsham, 15 Mo. 657; and Ellington v. Moore, 17 Mo. 424, are unlike this case in their essential features, being cases of a temporary absence merely, the defendants returning in time for service, and being actually served with process before the return day of the writ.

The moment this defendant left St. Louis, with intent to take up his residence in Texas, he ceased to be a resident here, or to have any usual place of abode in this State. (Drake on Attach. § 63; Clark v. Ward, 12 Grat. 440; Drake, § 64; Farren v. Barber 3 B. Mon. 217; Del Hoyo v. Brundred, 1 Spencer, N. J., 328.)

III. The fourth clause of the first section of the attachment act contains two distinct grounds of attachment; the one *in absconding*, based upon the personal misconduct of the debtor in secretly withdrawing himself beyond the reach

of any effective service of the ordinary process of law; and the other in *absenting himself*, based upon the continuance of the absence, whereby the service of proces is effectually prevented; and the plaintiff's first instruction should have been given.

Kingsland v. Worsham, 15 Mo. 661; Gamble, J.: "Regarding the clause as containing two distinct grounds of attachment, the first, or absconding, must subject the debtor to the process because of the character of his act in secretly withdrawing himself from his residence; and the second, or absenting himself, must have the same effect because of its continuance." (Bennett v. Avant, 2 Sneed, 152.)"

IV. The court erred in excluding the evidence offered by the plaintiff to show misconduct on the part of the defendant, in clandestinely sending his goods to auction, preparatory to absconding; it tended to show the character of his acts and conduct. (Kingsland v. Worsham, 15 Mo. 661.)

*Colvin*, for respondent.

The issue was whether the defendant had absconded or absented himself from his usual place of abode. The disposition he had made of his property was therefore immaterial, and the court committed no error in refusing to admit testimony to that point.

BAY, Judge, delivered the opinion of the court.

On the 3d of January, 1859, Ross sued out an attachment against Clark, alleging in his affidavit that defendant had absented himself from his usual place of abode in this State, so that the ordinary process of law could not be served upon him; also, that he had absconded from his usual place of abode in this State, so that the ordinary process of law could not be served upon him. The writ was served by attaching the property of defendant. On the 5th of January an order of publication was made by the Circuit Court, and renewed on the 22d of March. On the 27th of September following defendant filed a plea in the nature of a plea in abatement,

putting in issue the truth of the affidavit, and upon this issue the parties went to trial. The testimony given disclosed substantially the following facts: Clark was a dealer in paper and rags, on Second street, in the city of St. Louis, and had purchased largely from plaintiff. He had but one clerk, a young man by name of Paul, who testified that Clark left St. Louis on the 23d December, 1858, and stated to witness at the time he left that he was going to Leavenworth city, in Kansas, to obtain and bring to St. Louis the corpse of his brother. Witness had not before heard of the death of his brother. About a week after Clark left, the supposed dead brother made his appearance in St. Louis, in good health. Witness also testified that, before leaving, Clark told him that he would be back in two weeks or a month, and would write to him in about a week. Witness never heard anything from him, and did not see him again until about the 1st of August, 1859, seven months after his departure, when he met him on the street in St. Louis. Clark told him that he had been in Texas. When defendant left he gave witness no instructions whatever about his business beyond the time when he said he would be back; that, in point of fact, he gave him no particular directions, but simply left him as clerk in the store. Before defendant left, he and his wife were boarding at the house of a man by the name of Harbinson. Shortly afterwards she returned to her father and lived with him. They had no children, and had never kept house. Defendant left without letting any of his acquaintances know that he was going away. They made diligent inquiry in regard to him, but neither they or his father-in-law could learn where he had gone or what had become of him. After his return to St. Louis he stated that he had been in Texas, and had bought a ranche there, and had been living on it, and expected to live on it a few years longer, and then sell it. He expected to be in St. Louis but a few days. Mrs. Clark left Harbinson's and went to her father on the 8th of January, 1859.

Upon the foregoing facts the jury, strange to say, found

the issue for the defendant; but upon what theory or hypothesis, it is difficult to conjecture. The evidence established the truth of the affidavit beyond any cavil or doubt.

It was not a case in which a jury is called upon to determine in whose favor the evidence preponderates, for it was all on one side, and leading to but one conclusion. It is not the case of a debtor who is temporarily absent on business, and which absence may prevent the service of a summons, but it presents the case of a party who actually abandons his residence and takes up his abode in a distant State, secretly and clandestinely, not even imparting his intention to his wife, father-in-law, or any of his friends. If such a case does does not furnish a good ground for an attachment, we are at a loss to conceive what case would.

The court gave four instructions in behalf of the plaintiff and six for the defendant, but we find nothing in these instructions which could have led the jury into such an erroneous finding. The plaintiff asked several instructions which the court refused to give, but we have not deemed it necessary to pass upon them, as the instructions given fully advised the jury of the law of the case.

Upon the trial, plaintiff offered to prove that defendant was largely indebted, and that a day or two previous to his leaving St. Louis he sent from his store, to an auction room, large packages of goods, and sold large lots of goods in an unusual and clandestine manner, and at under prices. Defendant objected to the introduction of such testimony, and the objection was sustained by the court. We are of opinion that the testimony was admissible, not for the mere purpose of showing a fraudulent concealment or disposition of his property to hinder or delay his creditors, for that was not a cause assigned in the affidavit upon which the attachment issued, but for the purpose of showing the intent with which he left St. Louis.

A man leaving home on business, with the intention of soon returning, would not be likely to dispose of his property secretly, and at prices far below its value. The very fact of

converting a large amount of goods into money, by auction sales, and at a large sacrifice, and in a clandestine manner, furnished a reasonable presumption, particularly when viewed in connection with the other facts of the case, that he intended to abscond or absent himself so as to avoid the service upon him of the ordinary process of law.

The other judges concurring, the judgment will be reversed and the cause remanded for further trial.